*Reversed and remanded.*

---

## Ed. Cross *v.* The State.

1. **Venue.**— When the record fails to show proof of the venue of the offense the judgment of conviction will be reversed.

2. **The "Rule."**— The enforcement of the rule to sequester witnesses rests in the discretion of the trial judge, and his action will not be revised unless that discretion was abused to the prejudice of the appellant. The Code of Procedure, art. 665, expressly provides that "in no case where the witnesses are under the rule shall they be allowed to hear the testimony or any part thereof." Witnesses who violate the rule, and the officer in charge of them, should be punished as for contempt of court.

3. **Privilege of Counsel.**— The extent to which counsel may read to the jury from books is also a matter left largely to the discretion of the trial judge, and one which will not be revised on appeal unless that discretion was abused to the prejudice of the appellant.

4. **Same — Practice.**— The Code of Procedure expressly empowers the trial judge to regulate the order of argument in criminal trials, but entitles the State's counsel to the concluding address. In his open-

ing argument the State's counsel should fairly develop his case and give the law he relies on; and the trial court should see that he does so. But the opposing counsel are bound to anticipate the line of argument to which the evidence suggests the State's counsel may resort in his conclusion.

5. PRACTICE IN THIS COURT.— If appellant's counsel agreed to the statement of facts, its recitals are conclusive upon him in this court.

APPEAL from the District Court of Robertson. Tried below before the Hon. W. E. COLLARD.

The appellant was tried upon an indictment which charged him with an assault upon Alls Manning, with intent to murder him, on April 18, 1881. The verdict found appellant guilty, and assessed his punishment at confinement in the penitentiary for a term of three years.

The testimony at the trial was quite elaborate, and there is no occasion to give it here in detail. The first witness for the State, according to the agreed statement of facts, was " Allston, commonly called Alls, Manning." He and the defendant lived in the same neighborhood, and had a " fuss " three or four months before the day alleged in the indictment. About eight or nine o'clock in the night of that date, Manning was seated on the gallery of his house when he was fired upon from outside his yard fence, which was about twenty steps distant. Eight shot struck him, some taking effect in his neck and others in his shoulder. He immediately sprang into his house and got his pistol, which he shot in the direction from which he had been fired upon. He did not see the person who shot him. After returning the fire with his pistol, he ran to the house of Mr. Smith, a short distance off, for the purpose of borrowing his gun; but he was so exhausted when he got there that he lay down on Smith's gallery. On his cross-examination, Manning stated that a short time before he was shot he had a difficulty with a man named Johnson, who made an

indefinite threat as to what he would do the first time he caught witness out.

By the other testimony it appears that prompt action for the arrest of the defendant was taken by the sheriff and his posse. They found him at his home, and two guns there, of which one was a double-barreled shot-gun, one barrel of which was loaded and the other had been recently discharged. The charge remaining in the loaded barrel was drawn, and it was found to contain shot of which some corresponded with those taken from Manning's wounds. The wadding was yellow paper of the kind used to make paper sacks. A powder-burned piece of similar paper was found inside of Manning's yard near the spot from where he had been fired upon. It was in proof, on the other hand, that the kind of shot and of wadding drawn from the gun were in very general use. The defense made no effort to show where the defendant was when Manning was shot, and on this omission the district attorney laid stress in his concluding argument to the jury. The defense objected to this and appealed to the court to restrict the prosecuting counsel to the proofs in the case and the line of argument taken by the defense; and, the court overruling the objection, the defense reserved exceptions.

The opinion of this court either states or sufficiently indicates all other material facts.

*A. N. Smith* and *John E. Crawford*, for the appellant.

*H. Chilton*, Assistant Attorney General, for the State.

White, P. J. No venue having been proven in this case, the judgment must be reversed. There are, however, several questions arising on the record upon which we are earnestly requested by counsel to pass, and will proceed to do so.

1. With regard to the sequestering of witnesses under

the rule, most ample provision is made in the Code of Criminal Procedure, arts. 662 to 666 inclusive, and these provisions, where the rule has been invoked, should be carefully observed, and especially that portion of article 665 which provides that "in no case where the witnesses are under the rule shall they be allowed to hear the testimony in the case or any part thereof." It seems in the case before us that the witness complained of did not in fact hear the testimony of the other witness, though he was in the court room at the time the evidence was being given. Still, his presence in the court room was in violation of the rule, and should have subjected him and the officer having him in charge to punishment as for a contempt of court. Code Crim. Proc. art. 666. When a similar question arose in Avery's case, 10 Texas Ct. App. 200, it was held that the enforcement of the rule rests in the discretion of the trial judge, and that his action will not be revised unless abuse of that discretion to appellant's prejudice is made apparent. In this instance we see no cause to interfere with the action of the court in permitting the witness to testify.

2. It has been repeatedly held that the manner of conducting the argument of a case before the jury, and especially the extent to which counsel may in argument be permitted to read from books, whether legal or scientific, is another matter which is also confided to the sound discretion of the trial court, and one which this court will not revise unless it is made to appear that this discretion has been abused to the prejudice of the defendant. It seems that defendant's counsel read an instruction to the jury which had been commended by this court as a proper charge. In reply the prosecuting attorney read the facts in that case and commented upon the difference in the two cases, to show, doubtless, the applicability of the charge to the one and its inapplicability to the other. In permitting him to do so, we cannot perceive that the

court erred. *Wade* v. *De Witt*, 20 Texas, 398; *Hines* v. *State*, 3 Texas Ct. App. 483; *Bowen* v. *State*, 3 Texas Ct. App. 617; *Bingham* v. *State*, 6 Texas Ct. App. 169; *Hudson* v. *State*, 6 Texas Ct. App. 565; *Foster* v. *State*, 8 Texas Ct. App. 248.

But it is claimed further that injustice was done in that the prosecuting officer did not fully and fairly develop his case in the opening argument to the jury, and that defendant's counsel in consequence had no opportunity to reply to some of the positions assumed in the closing address. A similar question came up in the case of *Morales* v. *State*, 1 Texas Ct. App. 494, and it was said, "the State's counsel in his opening speech should fairly develop his case and give the law on which he relies. The presiding judge should require him in all cases to do this. If he failed to do this until his second speech, the presiding judge, in his discretion, would be authorized to let the defendant's attorney again address the jury, and then to allow the State's counsel to close the argument." Our statute provides that the order of argument is to be regulated by the judge, except that "in all cases the State's counsel shall have the right to make the concluding address to the jury." Code Crim. Proc. art. 667.

As presented in the bill of exceptions, we cannot see that the closing argument of the district attorney was unfair or unjust, nor can we say that it was not one which the defendant's counsel might not readily if not naturally have anticipated from the testimony.

3. Another error relied upon is a variance between the names of the party alleged to have been injured and the name as proven. In the indictment the injured party is called Alls Manning. Most if not all the witnesses call him Austin or Aus Manning. It does not appear that any particular witness specially testified that he was commonly known as or called Alls, but in the statement of facts, which was prepared and agreed to by counsel and

approved by the court, with regard to the first witness who testified and who was the injured party, we find it stated that "Alston, commonly called Alls Manning, for the State, testified." It is but fair to presume that this was the statement of a fact which the counsel intended to establish and agree to, as well as any other fact embodied in the statement. If it was not a fact and one not proven, then defendant's counsel should not have signed a statement to that effect. Had the judge made up the statement, the parties having failed, then indeed there might have been some show of reason for the defendant to complain if the fact had not indeed been proven. But here he states the fact himself, and agrees that the statement as signed by him is "true and correct." We are unable to see how, in the face of his agreement, he can be heard to complain now.

4. The charge of the court upon circumstantial evidence was amply explicit and sufficient, without the special instruction asked in behalf of defendant.

Because the statement of facts fails to show that the venue of the offense was proven, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*